*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0418P (6th Cir.)
File Name: 01a0418p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

LILY V. WATKINS, Personal
Representative for the Estate
of Ralph L. Watkins, Jr.,
deceased,
      *Plaintiff-Appellant,*

    *v.*

CITY OF BATTLE CREEK;
JEFFREY P. KRUITHOFF, Battle
Creek Chief of Police; SCOTT
METZGAR; DENNIS WILKINS;
STEVE KINNE; MATTHEW
ROBINSON; VICTOR PIERCE;
WILLIAM HOWE; DIAN
CANTRELL; ALLEN L. BYAM,
Sheriff, Calhoun County;
THOMAS MCHALE; JAMES
MCDONAGH; JOHN EVERETT;
PHIL ALLEN, in their
individual and official
capacities,
      *Defendants-Appellees.*

No. 00-1502

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 99-00013—Gordon J. Quist, District Judge.

Argued:  September 19, 2001

Decided and Filed:  December 11, 2001

Before:  GUY and MOORE, Circuit Judges; HULL,
District Judge.*

————————————

**COUNSEL**

**ARGUED:**  Thomas J. Hirsch, Kalamazoo, Michigan, for
Appellant.  Barbara Ann Hobson, Battle Creek, Michigan,
Joseph Nimako, CUMMINGS, McCLOREY, DAVIS &
ACHO, Livonia, Michigan, for Appellees.  **ON BRIEF:**
Thomas J. Hirsch, Kalamazoo, Michigan, for Appellant.
Clyde J. Robinson, Battle Creek, Michigan, Joseph Nimako,
CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia,
Michigan, for Appellees.

GUY, J., delivered the opinion of the court, in which
HULL, D. J., joined.  MOORE, J. (pp. 9-14), delivered a
separate dissenting opinion.

————————————

**OPINION**

————————————

RALPH B. GUY, JR., Circuit Judge.  Plaintiff, Lily V.
Watkins, Personal Representative for the Estate of Ralph L.
Watkins, Jr. (Watkins), appeals from the order granting
summary judgment in favor of defendants on claims brought

———————————

*    The Honorable Thomas G. Hull, United States District Judge for the
Eastern District of Tennessee, sitting by designation.

a medical evaluation. In addition, these defendants had not been informed by the city police of their suspicions regarding Watkins's possible swallowing of crack cocaine; they had not been at the scene and did not know that little crack was actually found in the apartment; and they did not know about the symptoms Watkins had manifested at the scene.

Despite these facts weighing in favor of summary judgment, however, McDonagh did ask Watkins whether he had ingested any drugs. Thus, viewing the facts in the light most favorable to Mrs. Watkins, I would conclude that McDonagh, at least, perceived facts that suggested to him that there was a serious risk to Watkins's health, drew the inference, and then, by accepting Watkins into the jail, disregarded it. If McDonagh asked the question, then the risk was arguably obvious enough for the other jail officials to have perceived it, as well. As with the Battle Creek city police officers discussed *supra*, the issue is whether McDonagh and the other county jail officials acted reasonably once they drew the inference regarding the substantial risk to Watkins's health. As this creates a dispute of material fact, in my opinion summary judgment was inappropriately granted to these particular Calhoun County defendants. For this reason, I respectfully dissent.

under 42 U.S.C. § 1983. Watkins died in custody from a cocaine overdose after denying that he had ingested cocaine and refusing medical treatment. Plaintiff challenges the district court's conclusion that defendants did not violate Watkins's Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff also argues that the district court erred by dismissing the § 1983 claims for failure to supervise and failure to train. After a review of the record and the arguments presented on appeal, we affirm.

## I.

On February 19, 1997, at 2:20 a.m., officers of the Battle Creek Police Department executed a search warrant at the apartment that Watkins shared with his girlfriend, Teyuna Alford. In their bedroom, police found Alford in bed and Watkins exiting a walk-in closet. A torn plastic bag was found on the floor of the closet, with white crumbs sprinkled around it. A larger piece found nearby was later identified as crack cocaine.

Watkins and Alford were handcuffed and moved to the couch in the living room. Several police officers saw Watkins licking his lips and a pink foamy drool coming from his mouth. One officer also spotted a white speck near Watkins's mouth. The officers asked Watkins if he had swallowed any drugs and explained that he could die if he had. Watkins was assured that they would take him to the hospital and that he would not face any additional charges if he had swallowed some drugs. Watkins was told that someone in a nearby county had recently died after swallowing drugs. Watkins consistently denied swallowing drugs. He explained the licking and discharge by stating that he had knocked his teeth against the bed while he was being handcuffed. He declined medical treatment for this as well. The officers did not inform their supervisors or jail personnel of what they had observed or that Watkins had denied swallowing drugs. Watkins and Alford were transported together to the Calhoun County Jail.

At about 3:30 a.m., Watkins and Alford were brought into the receiving area of the jail. Watkins complained of an upset stomach and appeared to be drunk or high. A few minutes later, Watkins fell from a chair onto the floor. He was also observed making some chewing motions with his mouth. Several sheriff's employees were present when Watkins was asked if he had swallowed any drugs or alcohol. He was again told that he would be provided medical attention and assured that he would not face additional charges if he had swallowed drugs. Watkins continued to deny that he had swallowed any drugs. He also explained his behavior by stating that his stomach was upset from drinking alcohol and smoking marijuana. He also said his teeth hurt from bumping them on the bed while being handcuffed. Jail employees checked his mouth more than once for injury and to be sure he did not have anything in it.[1] When Watkins got up to enter the intake area, he grabbed his stomach and bent over like he was going to throw up. He fell or lowered himself to the floor before being taken to a cell.

About five minutes later, Watkins, who was placed in an observation cell through which he could be seen from the intake desk, called one of the deputies involved in his intake and said he felt sick. The deputy offered to check on him every few minutes and wake him if he was asleep. Although that deputy did not return, other deputies observed Watkins sitting in the cell at 4:15 a.m., standing in the back of the cell at 4:45 a.m., moving about the cell at 5:00 a.m., and standing at the glass door looking out at 5:05 a.m. At about 5:20 a.m., deputies began a routine head count. At 5:30 a.m., they found Watkins behind the privacy wall. He did not have a pulse and was not breathing. They immediately began to administer CPR, but Watkins was pronounced dead by emergency medical personnel at 5:56 a.m.

---

[1] There is a dispute whether Alford was asked at this time if Watkins had swallowed any drugs. According to defendants, she was asked and responded: "Not that I know of."

(1) whether the officers actually believed Watkins's lies or instead disbelieved them and intended to punish Watkins for lying to them, and (2) whether the officers acted reasonably after having perceived that there was a risk to Watkins's health. These disputes of material fact preclude summary judgment. *Cf. Curry v. Scott*, 249 F.3d 493, 508 (6th Cir. 2001) (holding that the issue of defendants' actual knowledge should not be resolved on summary judgment but should be "left to the trier of fact").

Thus, I believe that the district court erred in granting summary judgment to defendants Wilkins, Pierce, Kinne, and Howe based on the defense of qualified immunity. Mrs. Watkins has alleged facts and proffered evidence that, when viewed in the light most favorable to her position, would enable a rational factfinder to conclude that these particular defendants were deliberately indifferent to Watkins's medical needs. "Summary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

Similarly, Calhoun County defendants Allen, Everett, McDonagh, and McHale perceived facts that gave rise to an inference Watkins had ingested drugs or, at minimum, was in need of medical attention. After his arrival at the Calhoun County jail, Watkins's condition steadily deteriorated. He collapsed twice, reported that he felt sick to his stomach, and continued to make unusual mouth movements. He had to be "assisted" through the intake door and expressed concerns about his physical condition to Allen. McDonagh, who was observed by McHale, examined Watkins's head and mouth because of his strange mouth movements a total of three times and asked Watkins whether he had taken anything. The issue is whether these defendants drew the inference that there was a substantial risk to Watkins's health but disregarded it. Arguably, the later conduct of these defendants indicates that they did not perceive the threat to Watkins's health — after all, McDonagh accepted Watkins into the county jail without

however, that the issue whether officials acted reasonably in response to perceived risks is ordinarily one for the jury rather than the court on summary judgment, at least where there is a dispute over the reasonableness of the officers' actions. Consider the following language, which precedes the material quoted *supra*:

> Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

*Id.* at 844.

In the present case, defendants Wilkins, Pierce, Kinne, and Howe argue in effect that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was . . . nonexistent," i.e., that they had drawn the inference that Watkins had swallowed crack cocaine but believed, after questioning Watkins, that this risk was nonexistent. Mrs. Watkins argues, however, that Watkins's lies were obvious lies, that the officers could have easily determined that Watkins did not injure his mouth during his arrest, and that the officers failed either to inform their supervisors or the Calhoun County jail of the injury or to follow the city's policy of reporting all officer-caused injuries. Instead of believing Watkins's lies, then, Mrs. Watkins argues that the officers determined to punish Watkins by making him suffer for them. There are thus two closely related factual disputes regarding what the officers did after they had made the crucial inference of a substantial risk to Watkins's health:

The district court granted summary judgment in favor of all defendants, finding that there had been no violation of Watkins's constitutional rights. Plaintiff appealed.[2]

## II.

We review the district court's grant of summary judgment *de novo*. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To establish a claim under 42 U.S.C. § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

### A. Eighth and Fourteenth Amendment

The Eighth Amendment does not apply to pretrial detainees. Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). To sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with "deliberate

---

[2]Plaintiff does not appeal the dismissal without prejudice of her state law gross negligence claim.

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to Watkins's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994). This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments. *Id.* at 837-38.

Thus, it is not enough for plaintiff to demonstrate a question of fact whether the police officers or sheriff's deputies *should have* known that Watkins had swallowed drugs. We find the evidence was not sufficient to lead a rational trier of fact to conclude that the officers or jailers knew Watkins needed medical attention for swallowing drugs. None of the police officers at the apartment saw Watkins swallow drugs. When the possibility was raised as a result of his drooling, the officers took care to advise Watkins that ingesting drugs could be deadly, that they would take him for medical treatment, and that he would not face any additional charges if he had swallowed drugs. Watkins repeatedly denied swallowing drugs, provided rational explanations for his behavior, and did not want medical treatment. He did not say anything about swallowing drugs to the transport officer, who was an acquaintance, but instead was concerned that she would think badly of him for being arrested.[3]

---

[3]Plaintiff also argues the supervisors negligently failed to inquire about whether drugs could have been swallowed when they saw the plastic bag in the closet. Mere negligence, however, is not enough to establish an Eighth or Fourteenth Amendment violation. *Farmer*, 511

had perceived and of which they were subjectively aware. This is, in my view, the most difficult question in this case. Once the officers perceived that Watkins might have swallowed crack cocaine, they asked Watkins about the frothy drool and other possible indications. Watkins then lied to the officers. The officers accepted Watkins's denials at face value without taking additional steps. The majority concludes, in effect, that Watkins's lies insulate the defendants from liability, because once the officers perceived that there was a serious risk to Watkins's life, they acted reasonably and asked him whether he had swallowed crack cocaine. The asking of these questions, in the majority's view, demonstrates that they were not deliberately indifferent to Watkins's health and safety.

Although the majority's conclusion on this issue is indeed a reasonable one, I do not think that it is appropriate for the court to resolve this issue on a motion for summary judgment, even in a qualified immunity case. The *Farmer* Court discussed this issue of reasonable action after a substantial risk has been perceived at some length in its opinion:

> [P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Id.* at 844-45 (citations omitted). The question, then, is whether the officers in the present case acted reasonably in relying on Watkins's denials. If they did so, then they cannot be held liable for his death, even if they had subjective awareness of the serious risk. *Farmer* clearly suggests,

To avoid summary judgment, then, Mrs. Watkins was required to allege facts and proffer evidence that, when taken in the light most favorable her to her position, established that the defendant officers were "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that they also drew] the inference." *Farmer*, 511 U.S. at 837. Then, under *Farmer*, the evidence, when viewed in the light most favorable to the Mrs. Watkins, must support the conclusion that the officers "acted or failed to act despite [t]his knowledge." *Id.* at 842.

On this appeal, Mrs. Watkins relies on the "obviousness" of Watkins's serious medical condition to support the inference of the officers' deliberate indifference. *Cf. Farmer*, 511 U.S. at 842. She argues that the city police officers who arrested Watkins should have concluded that Watkins had destroyed the cocaine in the apartment because they found little crack cocaine when they executed the search warrant, despite their belief that Watkins was a mid-level drug dealer. In addition, the only possible means for destroying the drugs under the circumstances in which Watkins was discovered was to swallow them. Moreover, Watkins exhibited signs of having swallowed the drugs, including "the pinkish frothy drool." Defendants Wilkins, Pierce, Kinne, and Howe observed these physical symptoms. These Battle Creek police officers have admitted, moreover, that, based on this drool and other facts, they asked Watkins whether he had swallowed any crack cocaine. The officers also claim that Watkins was informed that he required medical attention if he had swallowed any drugs and that the charges against him would not be increased if he admitted to having swallowed drugs.

These facts indicate that certain defendants (specifically Battle Creek police officers Wilkins, Pierce, Kinne, and Howe) perceived facts from which they could have drawn the inference that there was a serious risk to Watkins's life, and their asking of questions shows that they in fact drew the inference that there was such a risk. The relevant question then is whether these officers disregarded the risk that they

In spite of having no forewarning, jail personnel reacted to Watkins's behavior and asked him if he had swallowed any drugs. They also assured him both that he would not face additional charges and that they would get him medical treatment if he had swallowed any drugs. Watkins continued to deny the need for medical treatment and offered an explanation for why he was feeling sick to his stomach. While the one deputy who said he would check on Watkins failed to do so, Watkins was nonetheless kept under observation and his movements were noted by other officers. This case does not involve an incapacitated detainee or one who asked for but was refused medical treatment. Plaintiff faults defendants for not forcing medical treatment on Watkins in the face of his repeated denials and plausible explanations. We find that this is insufficient to establish a question of fact on the issue of deliberate indifference. Summary judgment was properly entered in favor of defendants on these claims.

## B.    Fifth Amendment

The Fifth Amendment prohibits the punishment of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Plaintiff asserts that the defendants intended to punish Watkins by making him suffer the consequences of having lied about swallowing cocaine. Put another way, plaintiff claims that the defendants refused to force Watkins to submit to medical treatment in order to punish him for denying that he had ingested the cocaine. There is absolutely no evidence that could lead a reasonable juror to find that any of the defendants intended to punish Watkins. Watkins was repeatedly asked about it, promised medical treatment, and assured that there would be no additional charges. Inquiry was made by both the police officers after his arrest and the deputies at the jail. As the district court observed, it was Watkins who swallowed the cocaine, concealed that he had done so, and refused medical treatment by denying that he had

---

U.S. at 835.

swallowed any drugs. The district court properly granted summary judgment to the defendants on plaintiff's Fifth Amendment claim.

## C.   Failure to Train

Plaintiff argues that the City of Battle Creek and the Calhoun County Sheriff failed to properly train the individual defendants in violation of § 1983. If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Having found no constitutional violations could be established, the district court did not err in granting summary judgment to the municipal defendants.

## AFFIRMED.

_____

## DISSENT

_____

KAREN NELSON MOORE, Circuit Judge, dissenting. The majority concludes that, under the standard for deliberate indifference set out in *Farmer v. Brennan*, 511 U.S. 825 (1994), the plaintiff, Mrs. Watkins, failed to produce evidence from which a rational trier of fact could conclude that any of the defendants in the present case drew the inference that Watkins had swallowed crack cocaine and thus was in need of medical treatment. Viewing the factual record in the light most favorable to Mrs. Watkins, however, I believe that Mrs. Watkins has produced evidence that could support the conclusion that at least some of the defendants in the present case were deliberately indifferent to Watkins's medical condition. Because the plaintiff has produced, in my opinion, evidence sufficient to create a dispute of material fact regarding whether some of the defendants drew and then disregarded the required inference, I respectfully dissent.

"Deliberate indifference" has both an objective and a subjective component. Under the objective component, which is not disputed in this case, the plaintiff must prove that the medical need was "sufficiently serious." *Farmer*, 511 U.S. at 834 (quotation omitted). Under the subjective component, the plaintiff must show that the officials being sued had "a sufficiently culpable state of mind." *Id.* at 834 (quotation omitted). A "sufficiently culpable state of mind" is one in which "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Showing that the official drew the required inference may be difficult in cases such as this, but the Supreme Court has indicated that this can be demonstrated through circumstantial evidence or even by showing that "the risk was obvious." *Id.* at 842.