Wendy SCHOENFIELD, etc., Plaintiff,

v.

CITY OF TOLEDO, et al., Defendant.

No. 3:01CV7454.

United States District Court,
N.D. Ohio,
Western Division.

Sept. 18, 2002.

Pamela A. Borgess, David W. Zoll, Zoll & Kranz, Toledo, OH, Jerome Phillips, Toldeo, OH, for Wendy Schoenfield.

Barbara E. Herring, Mark S. Schmollinger, City of Toldeo, Dept. of Law, Toledo, Oh, for City of Toledo, Christopher Hammye, Dolenna Murdock, Donald Mitchell, Irma Oberneder, Michael J. Navarre, Sergeant Gloria Burks, Sergeant Oscar Morales, Jeffrey Middleton, William Davis.

Stephen B. Mosier, McHugh, DeNune & McCarthy, Sylvania, OH, for K Mart Corp. Barbara Bond.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before this Court are Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 64), the Magistrate's Report and Recommendation ("R & R") (Doc. No. 71) advocating dismissal of the instant action, and Plaintiff's Motion to Reconsider (Doc. No. 72),[1] refiled as Plaintiff's Objections to Magistrate's Report and Recommendation (Doc. No. 76).

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981) and 28 U.S.C.

---

1. As Plaintiff's motion has been refiled as an objection to the Magistrate's R & R, the Court will deny the motion as moot.

§ 636(b)(1)(B) & (C), this Court has conducted a *de novo* review of the Magistrate Judge's findings to which the Plaintiff objects. Notwithstanding Plaintiff's other objections, Plaintiff is correct insofar as the language of the R & R suggests an analysis more appropriate for summary judgment. The R & R refers throughout to a lack of evidence to support Plaintiff's claims. Such an analysis is not warranted for a motion to dismiss. Therefore, the Court declines to adopt the R & R and instead conducts an independent review of Defendants' motion to dismiss. Based upon careful consideration of the parties' respective motions and the entire record herein, the Court will dismiss Plaintiff's Complaint in its entirety.

### I. BACKGROUND

At approximately 1:30 a.m. on March 27, 2000, decedent Eric Schoenfield attempted to purchase a gun at a Meijer's store in Toledo, Ohio. Decedent originally had contact with an employee in the sporting goods department, from whom he requested a "high powered heavy duty" gun. The employee, alarmed because decedent was acting peculiar and had fresh cuts on his arms and hands, summoned a manager. Decedent advised the manager that he wanted to purchase a Remington muzzle loader for dove hunting, which aroused the manager's suspicions. The store refused to sell a gun to decedent, who subsequently vacated the store. The store then contacted 9–1–1 and described the situation, after which Defendants Chief Michael Navarre, Sergeants Gloria Burks and Oscar Morales, and Officers Doleena Murdock, Donald Mitchell, Irma Oberneder, Christopher Hammye, William Davis, and Jeffrey Middleton (collectively "Defendant Officers") of the Toledo Police Department allegedly received broadcasted information regarding an allegedly intoxicated male with blood on his shirt and hands, who had attempted to purchase a gun.

Shortly after the broadcast, Defendant Officers detained decedent in a parking lot not far from the store. The officers did not believe decedent to be intoxicated, but questioned decedent as to the cuts and scratches on his hand and arms. Decedent apparently advised the officers that he and his wife were experiencing marital difficulties. Based on this response, the officers attempted to ascertain whether an act of domestic violence had occurred between decedent and his wife. To that end, Sergeant Burks left the scene to check on the safety of decedent's family.

Upon arriving at the Schoenfield residence at approximately 2:30 a.m., decedent's wife, Plaintiff Wendy Schoenfield, indicated she had not been a victim of domestic violence. Plaintiff informed Sergeant Burks of decedent's suicidal tendencies and expressed her belief that decedent's cuts were self-inflicted. Plaintiff also allegedly informed Sergeant Burks she believed decedent attempted to purchase the gun to take his own life, and requested that the officers take decedent to jail or a hospital, or at least hold decedent until Plaintiff could drive to the scene.

Sergeant Burks radioed Sergeant Morales and informed him domestic violence was not an issue and also communicated decedent's suicidal tendencies and Plaintiff's belief that the wounds were self-inflicted, but Burks did not request that the officers at the scene continue to detain decedent or transport him to jail or a hospital. However, after Plaintiff continued pleading, Sergeant Burks contacted Sergeant Morales to determine whether decedent was still at the scene. Sergeant Burks was advised that decedent had already been released.

Shortly after 6:00 a.m., decedent checked into a hotel and placed a "Do Not Disturb" sign on the door. At approxi-

mately 8:00 a.m., decedent purchased a gun from Defendant K Mart in Toledo.[2] Plaintiff reported decedent missing at around 11:00 a.m. on March 27, 2000. Calls were placed from the hotel room on that day, but no communications were made thereafter from decedent's hotel room. On March 29, 2000, the Lucas County Sheriff's Department found decedent's body. Plaintiff asserts decedent committed suicide in the hotel room with the gun purchased from K Mart.

Plaintiff filed suit in the Lucas County Court of Common Pleas. Defendants removed the action to federal court. The Complaint as presently amended alleges claims against Defendant Officers, in both their official and individual capacities, and Defendant City of Toledo under 42 U.S.C. § 1983 for various constitutional violations.[3] Plaintiff also asserts numerous Ohio state law claims. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants filed a motion to dismiss all claims. Magistrate Armstrong recommended that this Court grant Defendants' motion. Plaintiff has asserted numerous objections to the Magistrate's R & R. As noted above, the Court will undertake an independent analysis of Defendants' motion. The Court addresses below the parties' contentions.

## II. DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss Standard

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court is to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir.2002). "Dismissal is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir.2002) (quotation omitted). If the Court considers matters outside the pleading, then the motion is properly treated as one for summary judgment. *Id.; see also* FED. R. CIV. P. 12(b).

### B. Count I—Section 1983

■ In order to hold either the officers or the city liable under 42 U.S.C. § 1983, Plaintiff must first identify a constitutional right that has been violated. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir.2001). Plaintiff asserts Defendants violated decedent's constitutional right "of care and protection, as well as medical care that was reasonable and ordinary for his health, care, and well-being." Compl. ¶ 47. Plaintiff does not allege precisely which constitutional provision gives rise to the rights asserted, but does contend that decedent's detention constituted

---

2. Claims against Defendant K Mart and store employee Defendant Barbara Bond were dismissed with prejudice pursuant to Court order entered January 30, 2002.

3. The statute provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

"custody."[4] Plaintiff reasons that decedent was mentally disturbed while he was in "custody," and that the Defendant Officers "demonstrated deliberate indifference to [decedent's] constitutional rights when they ignored such mental disturbance, known or apparent risk of suicide, failed to protect him from such risk, and/or denied medical care that was necessary, reasonable and ordinary for his health, care, and well-being." Compl. ¶ 50.

Plaintiff further asserts that the City "maintained a practice, policy, and/or custom of gross neglect, recklessness or deliberate indifference in the identification, handling, and treatment of persons ... who evidenced signs of mental disturbance." Compl. ¶ 51. Plaintiff alleges that as a result of this policy, decedent committed suicide.

In Count IV, Plaintiff also alleges failure to properly hire, train, and supervise. These allegations, though not asserted in the context of Plaintiff's § 1983 count, are relevant to claims against the municipality and the supervisory officers.

■ The Due Process Clause of the Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law." The Due Process Clause does not, however, generally require provision of protective services, even if those services are necessary to save a life. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("As a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause").

The Supreme Court has, however, recognized certain instances in which the State has an affirmative duty of care and protection with respect to certain individuals. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court determined that the Eighth Amendment's prohibition against cruel and unusual punishment requires provision of a certain standard of medical care to incarcerated prisoners. The Court reasoned that the State must provide a certain standard of care because a prisoner is unable to care for himself, due to the deprivation of his liberty.

In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court extended *Estelle's* rationale beyond the Eighth Amendment prison incarceration scenario and determined that involuntarily committed mental patients have a Fourteenth Amendment due process right to services necessary to ensure their "reasonable safety" from themselves and others. The Court again reasoned that when the State deprives a person of his liberty and holds him in custody against his will, the State assumes a corresponding affirmative duty to provide for his safety and general well-being.

Nonetheless, in *DeShaney* the Supreme Court recognized that "[s]everal of the Courts of Appeals have read [*Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) ] ... as implying that once the State learns that a third party poses a special danger to an identified victim, and indicates its willingness to protect the victim against that danger, a 'special relationship' arises between State and victim, giving rise to an affirmative duty,

---

4. Plaintiff asserts that because the Complaint alleges that decedent was in "custody," the Court must regard him as so for purposes of the motion to dismiss standard. Contrary to Plaintiff's assertion, while a plaintiff's factual allegations are taken as true, the Court need not accept unwarranted factual inferences or legal conclusions. *See Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir.2002).

enforceable through the Due Process Clause, to render adequate protection." 489 U.S. at 197, 109 S.Ct. 998. The Court rejected this approach, explaining, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200, 109 S.Ct. 998. The Court instructed, "[i]n the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.*

 In the instant action, decedent did not come to harm through Defendants' actions. This is not an instance in which the Defendants selected an individual from the public at large and placed him in a position of danger. Defendants did not place decedent at the K Mart or at the hotel room. Defendants did not release decedent into greater harm than that in which they found him, nor was decedent in detention, characterized as "custody" or otherwise, when he committed suicide. The harm to decedent, while perhaps identifiable by Defendants, was not created by Defendants. Nor was decedent's liberty constrained by Defendants so as to eviscerate his own freedom of choice or ability to care for himself.

Ultimately, Plaintiff's attempt to characterize the instant investigatory traffic stop as a type of "custody" giving rise to the alleged constitutional rights and/or obligations of medical care, hospitalization, incarceration, and/or continued detention is unpersuasive in light of *DeShaney* and the Supreme Court's repeated reluctance to

further "expand the concept of substantive due process." *See Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992); *see also Weeks v. Portage County Exec. Offices*, 235 F.3d 275, 278 (6th Cir.2000) (finding no constitutional duty to take decedent into protective custody or provide medical attention; decedent was not in custody, defendant's actions did not cause the asserted harm, and defendant's actions did not place decedent in a more vulnerable position than he was in before he encountered defendant). Though the Supreme Court in *DeShaney* recognized that a duty to protect on the part of the State may arise where a "special relationship" exists between an individual and the State, the Court described such a relationship as arising where "the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *DeShaney*, 489 U.S. at 200, 109 S.Ct. 998. Such is not the case in the instant action.

Nor do the facts alleged implicate the noncustodial "state created danger" theory of liability recognized by the Sixth Circuit. This theory permits liability for affirmative acts of the State "which either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998). However, the facts alleged in the instant action do not support such a claim.

 The Court further notes that the Eighth Amendment provides no basis of relief for Plaintiff. "The Eighth Amendment's proscription of cruel and unusual punishments is violated by 'deliberate indifference to serious medical needs of prisoners.'" *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50

L.Ed.2d 251 (1976)). However, " 'Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [The] State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.' " *Id.* at 244, 103 S.Ct. 2979 (quoting *Ingraham v. Wright,* 430 U.S. 651, 671–672, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). As there was no formal adjudication of guilt against decedent at the time he allegedly required medical care, the Eighth Amendment has no application to the instant action. *See id.; see also Watkins,* 273 F.3d at 685–86.

■ Plaintiff's arguments with respect to certain policies and procedures of the Toledo police department also fail. Plaintiff asserts that "a duty of care and its corresponding liberty interest was created by Defendants' enactment of regulatory measures requiring the hospitalization of mentally ill persons." Pl.'s Opp. at 2. Plaintiff contends that TPD 260.20 requires hospitalization of persons presenting a substantial risk of harm to themselves or others, and thus decedent was constitutionally entitled to such treatment.[5] Contrary to Plaintiff's assertions, while the foregoing regulation sets forth certain procedures guiding police officers' treatment of mentally ill persons, the regulation does not create a constitutional liberty or property right to incarceration, continued detention, hospitalization, or medical treat-

ment. *See Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("creation of procedural guidelines to channel . . . decisionmaking" does not necessarily give rise to constitutional right); *Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Despite the foregoing, Plaintiff asserts "even if Defendants did not owe a predicate duty of care to [decedent], Plaintiff may still maintain a viable § 1983 claim because she has also alleged that Defendants, with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused constitutional harm." Pl.'s Opp. at 2. Contrary to Plaintiff's assertion, in a *Monell* [6] claim, liability exists only where the "action pursuant to [the] official municipal policy of some nature caused the constitutional tort." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Where no constitutional violation exists, there is no municipal liability for the same conduct. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) *(per curiam )*; *Smith v. Thornburg,* 136 F.3d 1070, 1078 n. 12 (6th Cir.1998). As the Court has determined that the Complaint fails to state a claim for a cognizable constitutional violation, there is no liability upon the municipality relative to the alleged conduct.

### C. State Law Claims

■ As a general rule, if the claims over which the Court has original jurisdic-

---

5. The policy provides in relevant part:

 When an officer from personal observation has reason to believe that a person is mentally ill AND presents a risk of substantial harm to himself or others, *AND the officer feels it is necessary to take immediate actions;* the officer shall take the following course of action:

● A request shall be made to take the subject to Rescue Crisis Services. * * * Exceptions:

● Persons requiring immediate medical attention shall be taken to a hospital.

Toledo Police Department Policy No. 260.20 (emphasis added).

6. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

tion are dismissed before trial, the state claims should be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966). Given that removal was predicated upon the Court's federal question jurisdiction and all federal claims have been disposed of, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise that jurisdiction when it has dismissed all other claims over which it has original jurisdiction).

### III. CONCLUSION

Based upon the foregoing, Plaintiff's Motion to Reconsider (Doc. No. 72) will be denied as moot. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 64) will be granted with respect to the entirety of Count I. Count IV is will be dismissed as well, insofar as this Count alleges claims pursuant to 42 U.S.C. § 1983. The Court declines to exercise jurisdiction over Plaintiff's state law claims. The state law claims will be dismissed without prejudice.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion accompanying this order, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion to Reconsider (Doc. No. 72) is denied as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 64) is granted with respect to the entirety of Count I. Count IV is dismissed as well, insofar as this Count alleges a claim pursuant to 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that all state law claims are dismissed without prejudice.

Case closed.