**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0356n.06

No. 12-3628

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 10, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KATHERINE RUSSELL, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| CHRISTOPHER DAVIS et al., | ) | |
| | ) | **O P I N I O N** |
| **Defendants-Appellees.** | ) | |
| _____ | ) | |

**Before: SUHRHEINRICH, MOORE, and GIBBONS, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Two police officers from St. Clair Township arrested Jason Miller ("Miller") and placed him in the back of a police car. Moments later, Miller withdrew a .357-magnum revolver that was hidden on his person and that had not been discovered by the officers. Miller turned the weapon on himself, committing suicide in the back of the police car. Plaintiff-Appellant Katherine Russell ("Russell"), the administratrix of Miller's estate, brought suit in state court against St. Clair Township and its officers under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and state law. All claims stem from the arrest of Miller, who Russell alleges was known by the police to be suicidal. After removal to federal court, the defendants sought summary judgment on the various § 1983 claims. Finding that the arresting officers did not commit a constitutional violation, the district court granted summary judgment to the defendants on all § 1983 claims, dismissed sua sponte the ADA claims, and remanded the remaining claims to state

court.  Because we conclude that there is no genuine dispute that the arresting officers did not

consciously disregard a substantial risk of a strong likelihood of suicide, we **AFFIRM** the district

court's judgment.

## I.  BACKGROUND AND PROCEDURE

Miller was arrested for shoplifting on September 5, 2008.  He identified himself to the St.

Clair Township police as his brother, Chris Miller ("Chris"); when no one attended the scheduled

court appearance, the judge issued a warrant to arrest Chris.  Together with his wife Trisha Miller

("Trisha"), Chris met with the police to resolve the misidentification—a corrected warrant later was

reissued.  R. 32-9 (Mick Dep. at 30–33) (Page ID #823–26).  During the meeting, Chris told Officer

Scott Mick ("Mick") that, according to a mutual friend, Miller intended to commit "suicide by cop."

*Id*. at 31 (Page ID #824).  Officer Mick recalled the conversation as follows:

> Trisha had advised me that [Miller] was going around telling friends or family that
> he had a knife on his person and that he was going to resist arrest.  Whenever we
> approached him he was going to pull the knife and force us to shoot him, because he
> was not brave enough to kill himself.

R. 34-1 (Mick Audio Statement at 7–8) (Page ID #1158); *accord* R. 32-4 (Mick Dep. at 31) (Page

ID #824).[1]  Officer Mick claims that he relayed this information to, among other people, Officer

Chris Davis ("Davis") and Sergeant Steve Brophey ("Brophey").  R. 34-1 (Mick Audio Statement

at 8) (Page ID #1158); R. 32-9 (Mick Dep. at 33–34) (Page ID #826–27).  Both Davis and Brophey

---

[1]Both Chris and Trisha testified that Chris, not Trisha, had warned Officer Mick.  As to
whether Miller was armed, Chris later testified that he didn't know whether Miller had a knife.
Rather, he explained "I just said, if he pulls a knife or something to that effect, Taze him instead of
shoot him."  R. 32-4 (Chris Dep. at 38) (Page ID #672).

deny that they received any such warning from Mick. R. 38 (Brophey Dep. at 99–101) (Page ID #1386–88); R. 39 (Davis Dep. at 61–62) (Page ID #1526–27).

Miller, accompanied by Russell, attempted to turn himself in to the authorities on September 12, 2008; he was unable to do so because the two police stations and the jail they visited either would not accept him or were not staffed. Instead, Miller returned to Russell's house. At that point, Trisha called Officer Mick and informed him that Miller was attempting to surrender and was at Russell's house. R. 32-9 (Mick Dep. at 40–41) (Page ID #833–34); R. 45 (Trisha Dep. at 27–30) (Page ID #2208–11). Officer Mick relayed the conversation to Sergeant Brophey. R. 32-9 (Mick Dep. at 42–43) (Page ID #835–36).[2] Brophey met Officer Davis at the police station, and they drove over to Russell's home. As they came close, they saw a man walking on the street who matched Miller's description and was wearing jeans and a long-sleeved tee-shirt and carrying a jacket. Although the man initially identified himself as "Fred Smith," he admitted on further questioning—and after Davis recognized him—to being Miller.

Miller was carrying a .357-magnum Ruger revolver, which measured roughly one foot in length and weighed nearly three pounds. Davis claims that he thoroughly searched Miller but did not discover the gun. R. 39 (Davis Dep. at 108-09, 111–15) (Page ID #1573–74, 1576–80).

---

[2]There is further disagreement about what was communicated in these calls. Trisha told Mick that Miller intended to surrender, she also states that she told Mick "Be careful. I don't know what state of mind [Miller's] in." R. 45 (Trisha Dep. at 27–28) (Page ID #2208–09). Mick states in his deposition, but not in his initial investigation hearing, that Trisha told him "it would be the easiest arrest of the day," and that he conveyed the same sentiment to Sergeant Brophey. R. 32-9 (Mick Dep. at 41–43) (Page ID #834–36); R. 38 (Brophey Dep. at 98–99) (Page ID #1385–86).

Russell's expert witness argues that "even a shoddy search would have detected this weapon," and so concluded that no search could have occurred. R. 42 (Lyman Dep. at 70–72) (Page ID #1993–95). The officers arrested Miller, cuffed his hands behind his back, and placed him in Davis's car. Davis and Brophey stood in front of Brophey's car, facing away from Miller, to search the jacket that Miller had been carrying. R. 39 (Davis Dep. at 121–126) (Page ID #1586–91). Miller withdrew the revolver from its hiding place and, by contorting himself while his hands remained cuffed behind his back, shot himself through the mouth.

The defendants filed a motion for summary judgment on grounds that no constitutional violation occurred and that alternatively they were protected by qualified immunity. The district court concluded that Davis and Brophey did not violate the Eighth Amendment, and so granted summary judgment to the defendants on all § 1983 claims. *Russell v. Davis*, No. 4:10-CV-02179, 2012 WL 1424915 (N.D. Ohio Apr. 24, 2012). Finding further that the factual basis for Russell's ADA claim was the same as that of her § 1983 claims, the district court dismissed that claim as well of its own accord. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where no genuine dispute of material fact exists and the moving party, as a matter of law, is entitled to judgment. Fed. R. Civ. P. 56(a). We review a grant of summary judgment de novo. *Med. Mut. of Ohio v. K. Amalia Enters. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). We consider "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In doing so, we draw reasonable

inferences in favor of the non-movant when determining whether there is a "genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citations omitted).

### III.  QUALIFIED IMMUNITY CLAIMS

Russell argues that, because they had been informed that Miller was likely to commit suicide,

Officer Davis and Sergeant Brophey had a duty to take precautions to prevent an in-custody

suicide—in particular, she argues that the officers should have searched Miller for weapons and

monitored Miller after placing him in a police car. Appellant Br. at 3. She brings a § 1983 claim

alleging that they violated this duty, which resulted in Miller's suicide in the back of the police car.[3]

"While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause

of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is

analogous to prisoners' rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 612,

615–16 (6th Cir. 2005). Under either the Eighth or Fourteenth Amendment, a plaintiff claiming

denial of adequate medical treatment "must establish that the defendants acted with 'deliberate

indifference to serious medical needs.'" *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir.

2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

---

[3]In her complaint, Russell alleges that Davis and Brophey violated the Fourth, Eighth, and Fourteenth Amendments. She has since conceded that the Eighth Amendment is inapplicable to this case, *see* R. 47 (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 16) (Page ID #2307), and does not raise the district court's denial of her Fourth Amendment claim on appeal.

Deliberate indifference includes an objective and a subjective component. As to the objective component, the alleged medical need must be "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). We have held that suicidal tendencies are a sufficiently serious medical need, and the parties do not contend otherwise. *See Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir.) ("A detainee's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies."), *cert. denied*, 513 U.S. 873 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), *cert. denied*, 537 U.S. 817 (2002). In the context of in-custody suicide, the Sixth Circuit has articulated the following test:

> [T]he proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under section 1983 for a jail detainee's suicide is: whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.

*Barber v. City of Salem*, 953 F.2d 232, 239–40 (6th Cir. 1992); *accord Gray*, 399 F.3d at 616. Thus, a plaintiff must provide evidence that a strong likelihood existed that the decedent would attempt to take his own life, from which a state official could infer a substantial risk of suicide; that the official in fact drew the inference; and that the official disregarded the risk.

We need not determine whether a genuine dispute of material fact exists as to whether Davis and Brophey could and did infer a substantial risk of Miller's suicide in light of the received tip because we conclude that, assuming they inferred a risk, nevertheless their actions did not demonstrate a disregard of that risk. Davis and Brophey apprehended Miller, handcuffed his hands behind his back, and placed him inside a police car. They stood a car's length away for less than a minute while they searched his jacket. It was during this brief interval that Miller managed to contort himself in such a way as to withdraw a hidden firearm and commit suicide.

Davis's and Brophey's conduct was far from ideal. At best, they performed only a cursory search. Although they restrained Miller with handcuffs, their own police chief testified that if an officer knew a detainee to be suicidal and possibly armed, "[h]e should probably hog tie him." R. 41 (Hyatt Dep. at 93) (Page ID #1897). Rather than leave Miller unattended even briefly, one officer could have monitored Miller while the other searched his jacket. *See id.* Nevertheless, "deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 835. Brophey and Davis substantially constrained Miller's freedom of movement both by handcuffing him with his hands behind his back and by seating him while handcuffed in a car. While they left him unattended, they did so only briefly and in the process of attending to other aspects of the arrest. *Cf. Gray*, 399 F.3d at 615 (holding that no constitutional violation occurred when a detainee who went unobserved for nearly an hour committed suicide). In short, that Davis and Brophey could have performed better but did not resulted in tragedy; this does not, however, mean that they acted with deliberate indifference in violation of the Eighth Amendment. Particularly in the context of this case, we

cannot conclude that the officers acted with deliberate indifference to the risk of Miller's suicide by firearm where Miller's possession of the firearm endangered the lives of the officers themselves.

Russell brings additional § 1983 claims against St. Clair Township and against Police Chief Donald Hyatt. As Russell concedes, the viability of these actions presupposes an underlying constitutional violation committed by the arresting officers. Because we affirm the district court's conclusion that no such violation occurred, we likewise affirm its decision to grant summary judgment on these derivative § 1983 claims.

## IV. ADA CLAIM

Although the defendants did not seek summary judgment as to Russell's ADA claim, the district court granted it nevertheless. We review the district court's decision to enter summary judgment sua sponte for abuse of discretion, and review the substance of its grant of summary judgment de novo. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). "A district court does not abuse its discretion in sua sponte granting summary judgment so long as 'the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to the issues to be considered by the court.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005) (quoting *Shelby Cnty.*, 203 F.3d at 931).

In this instance, the district court did not abuse its discretion to enter summary judgment on Russell's ADA claim. The factual bases that give rise to Russell's ADA claims are identical to those of her § 1983 claims. Moreover, both claims required the arresting officers to have acted with a

threshold mental state, which was briefed extensively before the district court and on appeal. Specifically, a successful ADA claim would have required that Russell prove, among other things, that Davis and Brophey intentionally discriminated against Miller because of a known disability (here, mental illness). Because we agree with the district court that Davis and Brophey did not act with deliberate indifference towards Miller's risk of suicide, we cannot thereafter conclude that a genuine dispute exists as to whether they acted so intentionally. *Cf. Farmer*, 511 U.S. at 836 (describing deliberate indifference as "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other"). Even if, as Russell contends, deliberate indifference may in some instances sufficient to state a claim under the ADA, that standard cannot be met here.

## V. CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's judgment.