RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0418p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EUNICE M. SPEARS, individually and as
Representative of the Estate of CHRISTOPHER
MCCARGO et al.,

　　　　　　　　　　　*Plaintiffs-Appellees,*

　　　v.

MATTHEW RUTH and CITY OF CLEVELAND,
TENNESSEE,

　　　　　　　　　　　*Defendants-Appellants.*

No. 09-5408

>

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 07-00058—Curtis L. Collier, Chief District Judge.

Argued: November 18, 2009

Decided and Filed: December 10, 2009

Before: MARTIN and SUTTON, Circuit Judges; REEVES, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Reid A. Spaulding, WATSON, ROACH, BATSON, ROWELL &
LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellants. Zachary H. Greene,
MILLER & MARTIN PLLC, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Reid
A. Spaulding, Robert H. Watson, Jr., WATSON, ROACH, BATSON, ROWELL &
LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellants. Zachary H. Greene,
Roger W. Dickson, Travis R. McDonough, Kevin D. Hudson, MILLER & MARTIN
PLLC, Chattanooga, Tennessee, for Appellee.

_____

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

1

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge.  Matthew Ruth, a police officer, and the City of Cleveland, Tennessee, bring this interlocutory appeal of the district court's denial of summary judgment on qualified immunity grounds.  Eunice M. Spears, mother of the deceased, responds individually and as representative of the estate of Christopher McCargo.  Christie McCargo, the daughter of the deceased, Clay McCargo and Madeline McCargo, relatives of the deceased, respond individually.  Officer Ruth claims that the district court erred in denying his request for summary judgment and that he is entitled to qualified immunity as a matter of law because plaintiffs have not shown that Officer Ruth was "deliberately indifferent" to Chrisopher McCargo's serious illness or injury while McCargo was in Officer Ruth's care.  "Deliberate indifference" is required to establish a Fourteenth Amendment claim for failure to provide medical assistance.[1]  The City of Cleveland claims that the district court erred in denying its request for summary judgment because plaintiffs have not shown that the city's "no transport" policy caused a constitutional violation.  This showing is necessary to establish a cause of action against a municipality under 28 USC § 1983.[2]  For the reasons set forth below, we **REVERSE** the district court's denial of summary judgment to Officer Ruth and the City of Cleveland and **REMAND** for entry of judgment for the defendants.

**I.**

In February 2006, Officer Ruth received a dispatch that a man, later identified as Christopher McCargo, was running up and down the street, hallucinating and otherwise behaving bizarrely.  When Officer Ruth arrived at the scene, McCargo told Officer Ruth that he had smoked crack cocaine.  Shortly thereafter, the Emergency Medical Services (EMS) arrived, and, after examining McCargo, decided not to take him

---

[1] *Weaver v. Shadoan,* 340 F.3d 398, 410 (6th Cir. 2003).

[2] *Cash v. Hamilton County Dept. Of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004).

to the hospital. A factual dispute exists regarding whether Officer Ruth told the Emergency Medical Technicians (EMTs) that McCargo had been behaving in a bizarre manner and that McCargo had admitted smoking crack cocaine. It is unclear whether McCargo affirmatively refused medical treatment or remained silent when asked if he needed help.

Officer Ruth arrested McCargo for public intoxication and transported him to the Bradley County Justice Center. Witnesses at the scene and Officer Ruth testified that McCargo kicked violently once placed into the back seat of the car. When Officer Ruth arrived at the jail, Bradley County jail officers, including a nurse, noticed McCargo "rocking back and forth stating don't let the dogs get me." The nurse performed another medical exam before checking McCargo into the jail, though Officer Ruth told them that the "EMTs at the scene had already cleared him." Testimony differs as to whether Officer Ruth told the Bradley County jail officers that McCargo admitted smoking crack cocaine and that the EMTs had noticed something white in McCargo's mouth.[3]

As McCargo continued to hallucinate, jail officers placed him in a restraint chair "for his own safety," tasing him to "relax his muscles." McCargo remained restrained for approximately three and a half hours, during which time he was calm but continued to hallucinate. Shortly after the officers released him from the chair, McCargo began to shake and spit up blood and then became unconscious. EMS personnel took McCargo to the hospital where he was diagnosed with respiratory and cardiac failure and multi-organ failure resulting from cocaine use. McCargo lapsed into a coma from which he never recovered. He died eleven months later.

At the time that Officer Ruth encountered McCargo, two conflicting police department policies regarding the transportation of individuals for medical services existed. One policy instructed police who encountered detainees exhibiting signs of "excited delirium" to transport them to the hospital for treatment, making no provision

---

[3]It is unclear from the record whether Officer Ruth was aware that one of the EMTs had seen a white substance in McCargo's mouth. The other EMTs concluded McCargo had nothing in his mouth.

for officers to engage the services of an EMS vehicle instead.[4]  However, Police Chief Wes Snyder's concurrent written memorandum prohibited his officers from transporting any individual to the hospital in a police vehicle for medical services.  Plaintiffs claim that this policy caused Officer Ruth not to transport McCargo to the hospital himself, resulting in his death.

Plaintiffs filed their original complaint in the Circuit Court of Bradley County, Tennessee.  The Defendants removed the case to the United States District Court for the Eastern District of Tennessee.  The defendants timely filed motions for summary judgment asserting various defenses including qualified immunity.  Summary judgment was granted for Defendants on all grounds but two:  (1) Ruth's request for summary judgment on the basis that he was protected by qualified immunity against the charge of violating McCargo's Fourteenth Amendment right to adequate medical care; and (2) the City's request for summary judgment on  plaintiffs' theory as to Police Chief Synder's "no transport" policy.  Ruth and the City timely sought interlocutory review of these rulings.

**II.**

"We review the district court's grant of summary judgment *de novo*."  *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 959 (6th Cir. 2001).  "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (citing FED.R.CIV.P. 56(c)). "We 'must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party,'" *id.* (quoting *Birch v. Cuyahoga County Probate Court,* 392 F.3d 151, 157 (6th Cir. 2004)), and we will "uphold a grant of summary judgment '[w]here the record as a whole could not lead a rational trier of fact to find for

---

[4]This policy instructed officers on how to recognize symptoms of cocaine psychosis and instructed officers to transport individuals exhibiting such symptoms, including "paranoia, bizarre behavior . . . hallucinations . . . and aggressive, violent behavior" to the hospital.  It is unclear whether Ruth had been trained on this policy at the time of McCargo's death.

the non-moving party,'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.**

Government officials are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights. *See Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"Pretrial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (citing *Watkins v. City of Battle Creek,* 273 F.3d 682, 685-86 (6th Cir. 2001)). "A cause of action under §1983 for failure to provide adequate medical treatment requires a showing that the defendants acted with deliberate indifference to the serious medical needs of the pretrial detainee." *Id.* (internal citations and quotations omitted). Deliberate indifference requires that the defendants "knew of and disregarded a substantial risk of serious harm to [the plaintiff's] health and safety." *Watkins*, 273 F.3d at 686 (citing *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994)).

"There are two parts to the claim, one objective, one subjective. For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Estate of Carter,* 408 F.3d at 311 (internal citations and quotations omitted). "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id*. (internal citations and quotations omitted).

### A.    *Officer Ruth*

In this case, plaintiffs allege that, because Officer Ruth failed to inform the EMTs on the scene and at the jail that McCargo had admitted he smoked crack cocaine, Officer Ruth violated McCargo's constitutional right to receive medical care.

### 1.       *Existence of a Sufficiently Serious Medical Need*

"[W]here a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention . . . it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004) (internal citations and quotations omitted).

In *Blackmore*, we previously denied prison officials' request for summary judgment, finding that the seriousness of the detainee's underlying medical condition, appendicitis, could be discerned by the average layperson without medical proof because the detainee complained of sharp stomach pain over two days and vomited, which were "classic signs of appendicitis." *Id.* at 900.[5] Similarly, we have found that a detainee lying face down, unresponsive and exhibiting symptoms of *delirium tremens* showed medical need sufficient for lay people to recognize he needed medical attention. *Bertl v. City of Westland*, No. 07-2547, slip op. at 5, (6th Cir. Feb. 2, 2009).

Several factual disputes exist regarding how obvious McCargo's symptoms actually were to Officer Ruth, the EMTs, and jail officers. Officer Ruth does not contest that: (1) McCargo told Officer Ruth that he had smoked crack cocaine; (2) McCargo told Officer Ruth that he had been running away from dogs; and (3) the dispatcher told Officer Ruth that McCargo was "running up and down the street" and "acting like he had bugs crawling on him and in his pockets and thinks they are coming to get him." However, it is unclear from the record whether Officer Ruth told the EMTs or the jail officers that McCargo admitted he had smoked crack cocaine and about McCargo's bizarre behavior. The record also does not reflect whether Officer Ruth knew about the white substance one of the EMTs believed that he saw in McCargo's mouth.

---

[5]We additionally held that verifying medical evidence was needed only in cases involving "minor maladies or non-obvious complaints of a serious need for medical care." *Id.* at 898.

However, the EMTs and a jail nurse, who presumably had a greater facility than the average layperson to recognize an individual's medical need, observed McCargo's behavior and administered tests based on those observations. Both the EMTs and jail officers concluded that McCargo did not need to be transported to the hospital. Therefore, plaintiffs have not established that McCargo's condition and need for medical attention, which was not obvious to trained medical personnel, would have been obvious to a layperson or to Officer Ruth—who was less able than EMTs to determine McCargo's medical needs. We thus find that the plaintiffs have not established the obvious existence of a sufficiently serious medical need.

### 2.        *Sufficiently Culpable State of Mind*

Plaintiffs must show that the "'official [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Watkins*, 273 F.3d at 686 (quoting *Farmer*, 511 U.S. at 837). The official must then disregard that risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). A plaintiff can demonstrate this "in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (internal citations and quotations omitted).

In a case that is factually similar to the current case, we held that officers were not deliberately indifferent when a detainee, who swallowed cocaine during a police chase, became sick, vomited, lost consciousness, and then died. *Weaver*, 340 F.3d 398. When EMS personnel arrived on the scene, the officers, who had not actually seen the detainee ingest any drugs, still requested that the EMTs examine the detainee for a possible drug overdose. Despite numerous offers of help by the EMTs, the detainee refused treatment and, when asked if he wanted to go to the hospital, replied, "No, I want to go to jail, and I haven't taken nothing. Leave me alone." *Id.* at 403. Similarly, in *Watkins v. City of Battle Creek* we found that officers were not deliberately indifferent to the medical needs of a detainee who denied swallowing drugs even after being assured

that he would not face additional charges for admitting to doing so. 273 F.3d 682, 686 (6th Cir. 2001). He continued to deny taking drugs and refused medical treatment. He later died in police custody. *Id.* at 685.

Similarly, here there is no evidence that Officer Ruth was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, that he drew that inference and chose to disregard the risk. Although Officer Ruth admits that McCargo told him that he had smoked crack cocaine, Officer Ruth was entitled to rely on the EMTs' and the jail nurse's medical assessments that McCargo did not need to be transported to the hospital. Further, Officer Ruth's disputed failure to tell the EMTs and jail officers that McCargo admitted to smoking crack cocaine was at worst negligent, and does not rise to the level of a constitutional violation. Therefore, plaintiffs have not shown that Officer Ruth was deliberately indifferent. Because Officer Ruth committed no constitutional violation against McCargo, we need not address the question of whether McCargo had a clearly established right to medical care in these circumstances. Based on the reasons set forth above, we find that, because no constitutional violation occurred, Ruth is entitled to qualified immunity. *Hills,* 457 F.3d at 587 (citing *Katz,* 533 U.S. at 201).

### B.        The City of Cleveland

The City of Cleveland also requests summary judgment, arguing that plaintiffs have failed to show that (1) a constitutional violation occurred; and (2) that the constitutional violation was caused by a particular policy or custom. *See Cash*, 388 F.3d at 542-43.

To establish municipal liability under section 1983, the plaintiff must establish that: (1) the plaintiff's harm was caused by a constitutional violation; and (2) the city was responsible for that violation. *Id*. Municipalities are liable for harms resulting from a constitutional violation *only* when the injury resulted from an "implementation of [the municipality's] official policies or established customs." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring). "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom.

The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (internal citations omitted).

"'Official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). A municipality can be shown to have a "custom" causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice. *Monell*, 436 U.S. at 690-691; *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

The plaintiff must also demonstrate "'a direct causal link' between the policy and the alleged constitutional violation" in order to show that the municipality's "'deliberate conduct' can be deemed the 'moving force' behind the violation." *Graham ex. rel. Estate of Graham v. County of Washtenew*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001).[6]

As demonstrated above, plaintiffs have not shown facts sufficient to find that a constitutional violation occurred. Even had a violation occurred, plaintiffs have failed to show that Police Chief Snyder's policy prohibiting his officers from transporting individuals to the hospital in a police vehicle for medical services caused McCargo's injuries. At most, the evidence shows that Officer Ruth was reluctant to transport McCargo to the hospital. However, this reluctance could have sprung from any number

---

[6] A municipality cannot be held liable in section 1983 actions on a *respondeat superior* theory. *Monell*, 436 U.S. at 691.

of motivations, including the possibility that Officer Ruth, relying on the EMTs' assessment, did not believe that McCargo needed to go to the hospital for treatment.[7]

## IV.

Because the record as a whole does not support the inference that a reasonable trier-of-fact could find a causal connection between either Officer Ruth's actions or Police Chief Synder's no-transport policy and McCargo's injuries, we **REVERSE** the district court's denial of summary judgment to Officer Ruth and the City of Cleveland and **REMAND** for entry of judgment for the defendants.

---

[7]Arguably, the individuals in the best position to have detected McCargo's condition and called for assistance were officers at the jail who observed McCargo's hallucinations and other bizarre behavior during the three and a half hours that he was in custody. However, as those officers are not parties in this suit, we may not address their potential liability.