**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0971n.06

No. 11-1609

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

***Sep 04, 2012***

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARK MILLS et al., | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| COUNTY OF LAPEER et al., | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | **O P I N I O N** |
| | ) | |

**Before: SILER and MOORE, Circuit Judges; VAN TATENHOVE,* District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** This appeal concerns the latest episode in a saga of antagonism between the Mills family and officials of the Lapeer County, Michigan government. This time around, officials of the County Treasurer's office evicted Plaintiffs-Appellants Mark and Ellen Mills from their commercial property following a tax foreclosure, and the Millses brought suit for illegal eviction and for violation of the First, Fourth, and Fourteenth Amendments. The district court granted summary judgment in favor of Defendants-Appellees County of Lapeer and Lapeer County Treasurer Dana Miller (collectively, "the County"). Because the Millses were trespassers rather than tenants at the time of the eviction, and thus lacked a protected property interest under state or federal law, we AFFIRM.

---

*The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I.  BACKGROUND

In 2005, Mark and Ellen Mills (collectively, "Mills") purchased commercial property located on Clifford Road in Silverwood, Michigan on a land contract.  Mills stored personal effects on the property, as well as items related to his numerous business ventures, which included selling refreshments at fairs and auctions, building and selling food carts for the same purpose, and building and selling horse carts.  Mills soon fell behind on the payments, and neither Mills nor the land-contract vendor paid property taxes.  The County instituted tax foreclosure proceedings, which culminated in the issuance of an Order of Foreclosure in February 2009.  Prior to issuing the Order, the County held a Show Cause Hearing at which taxpayers facing tax foreclosure could submit a hardship application and receive an extension on delinquent taxes; Mills did not attend the hearing or submit a hardship application.  Pursuant to the Order, title passed to the County in fee simple on April 1, 2009, after which Mills had no further right of redemption.

In early May, Ellen Mills contacted Miller and asked when Mills would have to leave the property.  The parties dispute whether Miller gave an exact date, but agree that Miller told Ellen Mills that Mills had to vacate the property.  On May 8, the County issued a formal Notice to Quit/Termination of Tenancy, informing Mills that he "must move by June 9, 2009 or your landlord/landlady may take you to court to evict you."  On June 6, Miller drove by the property and observed individuals loading items into several vehicles and a trailer.  Two days later, she ordered that the locks on the property be changed following the June 9 deadline in the Notice to Quit.  On June 11, at a time when Mills was not present at the property, County employees changed the locks.

2

The County contends that several doors were unlocked and windows were missing, and that the building had no electrical service, a description that Mills contests.

On June 16, County employees returned to the property and began removing the remaining items. Most of the personal property was taken to a County facility for storage, but some was placed in a dumpster, scattered about the property, or lost. Among the effects that were scattered or destroyed were personal papers and business records. Mills alleges that two County employees took horse carts, as well as pop cans, umbrellas, t-shirts, scaffolding, and a toolbox. One County employee returned to the property on his own time to go dumpster diving and placed the items he found in his personal vehicle. Mills was able to reclaim his personal property that was stored at the County facility; County employees also returned to the property and brought many of the items in the dumpster back into the building. The County subsequently issued a new Notice to Quit and instituted eviction proceedings in Lapeer County district court.[1]

Mills filed this lawsuit in October 2009. After granting leave for Mills to file an amended complaint, the district court granted partial summary judgment to the County on the illegal-eviction, due-process, and Fourth Amendment claims, holding that Mills was a trespasser at the time of the eviction and thus not entitled to the protections of Michigan's Anti-Lockout Statute and without a cognizable property interest under the Due Process Clause. In so holding, the district court rejected the magistrate judge's determination that Mills was a tenant at sufferance at the time of the eviction.

---

[1]Neither this second Notice to Quit nor any filings from the eviction proceedings are in the record. Miller confirms that a second Notice was sent in August 2009.

3

The district court further held that the seizure of Mills's property was reasonable. Alternatively, the court held that Miller was entitled to qualified immunity on the constitutional claims because the right at issue was not clearly established.

The County moved for summary judgment on the remaining claims, including the First Amendment claim.[2] Reasoning that none of these claims was viable given the district court's previous opinion, the magistrate judge recommended that the motion be dismissed as moot and that the district court enter judgment in favor of the County. In a simultaneously entered opinion and order, the magistrate judge explained why the First Amendment claim failed as a matter of law. Neither party objected, and the district court dismissed all remaining claims and dismissed the action with prejudice. Mills timely appealed. We review de novo the district court's grant of summary judgment. *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011).

## II. ANALYSIS

### A. Illegal Eviction

Mills brings suit for illegal eviction under common law and the Michigan Anti-Lockout Statute.[3] The latter provides that:

---

[2]Mills also brought claims for conversion, breach of contract, fraud, and conspiracy, which were dismissed at various points in the litigation and are not the subject of this appeal.

[3]Despite Mills's reference to common-law illegal eviction in the complaint, he does not explain the nature or basis for this claim. Moreover, self-help eviction was permissible at common law. *See Deroshia v. Union Terminal Piers*, 391 N.W.2d 458, 459 (Mich. Ct. App. 1986) ("At common law a landlord could use reasonably necessary force to remove a holdover tenant or other unauthorized occupant of his land.").

> (1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

> (2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200.00, whichever is greater, for each occurrence and, where possession has been lost, to recover possession.

Mich. Comp. Laws § 600.2918(1), (2).[4] As relevant to this case, "unlawful interference" includes "[t]he removal, retention, or destruction of personal property of the possessor" and "[a] change, alteration, or addition to the locks . . . on the property without forthwith providing keys or other unlocking devices to the person in possession." *Id.* § 600.2918(2)(b), (c). The Anti-Lockout Statute "virtually eliminates the self-help remedy in Michigan in favor of judicial process to remove a tenant wrongfully in possession." *Deroshia*, 391 N.W.2d at 460. The scope of subsection (2)'s protection is somewhat uncertain, however, because the statute does not define "tenant." Michigan law recognizes three categories of tenancy: tenants by the years, tenants at will, and tenants at sufferance. 2 John G. Cameron, Jr., Michigan Real Property Law: Principles and Commentary § 20.2, at 1096 (3d ed. 2005). Mills does not argue on appeal that he was a tenant by the years or

---

[4]Although the complaint specifically alleges violation of only subsection (1), the district court held that the evidence did not show that the County forcibly ejected or kept out Mills, and Mills does not contest this holding on appeal. The district court analyzed this claim as if it had been brought under subsection (2); the County points out the discrepancy in its appellate brief, but both parties have briefed the issue as if Mills had sued under subsection (2).

a tenant at will.[5] Instead, the debate centers on whether Mills was a tenant at sufferance at the time

of the eviction.[6]

### 1. Was Mills a Tenant At Sufferance or a Trespasser?

The parties' briefs traverse one hundred and fifty or so years of Michigan property law,

debating the meaning of tenancy at sufferance. Mills contends that any lawful occupant who remains

on the land after his right to possess it has expired is a tenant at sufferance. The County argues that

the landowner must acquiesce in the occupant's continued presence in order to create a tenancy by

sufferance; because the County unequivocally expressed its intent that Mills vacate the property, the

---

[5]A tenancy by the years (or periodic tenancy) is a tenancy for a fixed term based on an agreement between the parties. 2 Cameron, Michigan Real Property Law: Principles and Commentary § 20.7, at 1098. A tenancy at will is a "tenancy for an indefinite period that is terminable at the desire of either party" and requires "[c]onsent of the landlord, whether actual or implied by law." *Id.* § 20.3, at 1096.

[6]In *Nelson v. Grays*, 531 N.W.2d 826, 829 (Mich. Ct. App. 1995), the Michigan Court of Appeals held that whether an individual is a "tenant" within the meaning of the Anti-Lockout Statute "depends upon the existence of a contractual relationship between the owner and the possessor wherein the possessor pays consideration in exchange for the right to occupy the property," a reading that would exclude tenants at sufferance, who do not have a contractual relationship with the owner and who do not pay rent. The question in *Nelson* was whether the children of a rent-paying tenant could recover under the Anti-Lockout Statute, so the court did not address the ability of tenants at sufferance to recover damages. *See id.*; *cf. Barron v. Fed. Home Loan Mortgage Corp.*, No. 07-11580, 2008 WL 275675, at *1 (E.D. Mich. Jan. 31, 2008) (distinguishing *Nelson* in the context of a post-redemption period mortgagor and noting that "[t]he Michigan antilockout statute . . . draws no distinction among tenants at will, by the years, or by sufferance"). Because we conclude that Mills was not a tenant at sufferance at the time of the eviction, we need not consider the impact of *Nelson* in this context.

County asserts, Mills therefore never became a tenant at sufferance. The district court adopted the latter view.[7]

Michigan law is inconsistent. Some cases define a tenant at sufferance as "a tenant who came into possession rightfully, by permission of the owner, and continued to occupy the premises after the expiration of his lease." *Ryal's Inc. v. Stavropoulos*, 263 N.W. 770, 770 (Mich. 1935); *see also Pattison v. Dryer*, 57 N.W. 814, 815 (Mich. 1894) ("The general rule is that when a tenant comes rightfully into possession of land by permission of the owner, and continues to keep the same after the title from which by such possession he had the right to hold the same, he is said to be a tenant at sufferance."); *Felt*, 232 N.W. at 180 (same); 2 Cameron, Michigan Real Property Law: Principles and Commentary § 20.6, at 1097 (same); *accord* Black's Law Dictionary (9th ed. 2009) (defining tenant at sufferance as "[a] tenant who has been in lawful possession of property and wrongfully remains as a holdover after the tenant's interest has expired"). A tenant at sufferance "holds without right, yet is not a trespasser." *Pattison*, 57 N.W. at 815.

Some of these cases suggest that a tenancy at sufferance begins immediately upon the expiration of the tenant's right to possess the property. Because the tenant in *Auto Parts, Inc. v. Jack Smith Beverages, Inc.*, 16 N.W.2d 141, 144–45 (Mich. 1944), remained on the property after his periodic tenancy ended on June 1 and the owner "did not consent to or acquiesce in such holding

---

[7]Despite its name, a tenancy at sufferance need not have been preceded by a landlord/tenant relationship. *Felt v. Methodist Educ. Advance*, 232 N.W. 178, 180 (Mich. 1930). Accordingly, the fact that Mills was a land vendee whose ownership rights were extinguished by tax foreclosure does not affect the analysis.

over," for example, the court concluded that "after June 1, . . . defendant became a tenant at will or by sufferance." *See also* 1 Herbert Thorndike Tiffany, The Law of Real Property and Other Interests in Land § 68, at 246–47 (1920) ("A tenant wrongfully holding over is . . . a tenant at sufferance a day after the wrongful holding begins to the same extent as he is a year thereafter.").

Other Michigan cases suggest that a tenancy at sufferance requires the additional element of the property owner's passive acquiescence in the tenant's continued presence, which can be demonstrated by a lengthy delay in objecting. *See, e.g.*, *Kunzie v. Wixom*, 39 Mich. 384, 1878 WL 3468, at *2 (1878) ("[A] tenant at sufferance is one who having entered under a lawful title holds over without right and by reason of the laches of his landlord, after the termination of the interest."); *Sch. Dist. No. 11 of Alpine Twp. v. Batsche*, 64 N.W. 196, 197 (Mich. 1895) ("We think the rule is that a person in possession of land lawfully, who holds over without right, becomes a tenant at sufferance, if the owner suffers him to remain in possession a sufficient length of time to imply an intentional acquiescence in the occupancy . . . ."); *De Bruyn Produce Co. v. Romero*, 508 N.W.2d 150, 158 & n.9 (Mich. Ct. App. 1993) (reciting the rule from *Batsche* and noting that "[t]he question then becomes what period of time is sufficient to establish laches on the part of the landowner"); *see also* 15 Mich. Civ. Jur. *Landlord and Tenant* § 12 (2012) ("The general rule is that a person in lawful possession of land who holds over without right becomes a tenant at sufferance if the owner allows the person to remain in possession for a sufficient length of time to imply an intentional acquiescence in the occupancy."). These cases do not explain what status an individual who remains on the

property has in between the expiration of his initial possessory interest and the creation of any tenancy at will or sufferance.

We need not resolve this issue of Michigan law conclusively, however, because the facts of this case show that any tenancy at sufferance that may have existed was terminated prior to the eviction. Under Michigan law, "an estate at will or by sufferance may be terminated by either party by giving 1 month's notice to the other party." Mich. Comp. Laws § 554.134(1). Here, the County gave notice on May 8 at the latest, which was more than a month before the eviction.

This fact raises another question, however. Although a tenant who holds over upon the termination of other types of tenancies can become a tenant at sufferance, a tenant at sufferance's status once the tenancy at sufferance has been terminated is less clear. By continuing to hold over, he may become some sort of second-degree tenant at sufferance. The more logical result is that he becomes a trespasser. *See Allen v. Carpenter*, 15 Mich. 25, 1866 WL 1396, at *10 (1866) (Campbell, J.) ("[A] tenant at sufferance is not a trespasser, unless he attempts to hold over after the landlord re-enters and terminates that peculiar occupancy."); 52 C.J.S. *Landlord and Tenant* § 302 (2012) ("Tenants at sufferance who receive notice to quit the premises and remain in possession after the date stated in the notice . . . become trespassers and are not entitled to further notice to quit."). Because a tenant at sufferance must have originally come into possession lawfully and because his presence was no longer lawful as of the start of the initial tenancy at sufferance, he cannot create a second tenancy at sufferance upon the termination of the first. *See* 2 Cameron, Michigan Real

9

Property Law § 20.6, at 1098 ("For a tenancy to become a tenancy by sufferance, it must originally have been created by agreement of the parties, not by an act of law.").

Without ruling on the correctness of the district court's reasoning, we therefore reach the same result on different grounds. Because any tenancy at sufferance Mills may have had was terminated, he was a trespasser at the time of the eviction.

### 2. If Mills Was A Trespasser, Was the Eviction Nevertheless Unlawful?

Mills contends that the result of the tenancy-at-sufferance debate is inconsequential, because tenants at sufferance and trespassers are afforded the same protections against extrajudicial eviction and, thus, according to Mills, the County's self-help eviction was unlawful under Michigan law regardless of his status. Although Michigan has a clearly expressed public policy in favor of eviction by judicial process in nearly all situations, *see Deroshia*, 391 N.W.2d at 460, Mills's argument is dubious. Subsection (2) of the Anti-Lockout Statute applies to "any tenant," and a trespasser is not a tenant under Michigan law. By contrast, subsection (1), which is inapplicable here, applies to "any person," suggesting that subsection (2) is more limited in scope. The use of "any tenant" rather than "any person" in subsection (2) of the Anti-Lockout Statute presupposes a class of persons who occupy property yet are not entitled to that law's protections.[8]

The Michigan Supreme Court has described the Anti-Lockout Statute as an effort "to reduce the number of violent confrontations occurring as a consequence of landlords entering onto the

---

[8]Moreover, Michigan has not wholly abolished self-help eviction. Self help is still available in Michigan against hotel guests, for example. *Ann Arbor Tenants Union v. Ann Arbor YMCA*, 581 N.W.2d 794, 798 (Mich. Ct. App. 1998).

premises while tenants believed that they were rightfully in possession." *Grant v. Detroit Ass'n of Women's Clubs*, 505 N.W.2d 254, 259 (Mich. 1993). This goal was not implicated by the County's actions: the eviction was not violent and Mills knew that he was not in rightful possession of the property. Even a trespasser could recover damages under the Anti-Lockout Statute if a landowner's use of self-help against him devolved into a violent breach of the peace, because "any person" can recover if the self help is "forcible." Mich. Comp. Laws § 600.2918(1).

Mills notes that Michigan law allows landowners to invoke summary judicial proceedings to recover possession of property from, inter alia, a person who "comes into possession of premises by trespass without color of title or other possessory interest." Mich. Comp. Laws § 600.5714(1)(f). The summary-proceedings statute does not require landowners to follow such procedures, however, *see id.* § 600.5714(1) ("A person entitled to premises *may* recover possession of the premises by summary proceedings . . . .") (emphasis added), and does not provide a cause of action for the evicted individual if the landlord does not do so. Admittedly, it is somewhat odd that Michigan law would provide for summary proceedings in situations in which self-help eviction is an alternative option, though it is conceivable that a landowner would prefer to proceed through the judicial process even if he were not required to do so. Judicial process may well be the better course of action, but Michigan law does not require it in this situation.[9]

---

[9]As a federal court, our interpretations of Michigan law are not binding on Michigan courts. Clarification on several issues addressed in this opinion would be helpful and, if Michigan courts find fault in our reasoning or conclusions, they may provide such clarification.

**B. Constitutional Claims**

Mills also brings suit under 42 U.S.C. § 1983, alleging violation of the First, Fourth, and Fourteenth Amendments by both Miller and the County. The County is liable under § 1983 only if "the constitutional violation was caused by a particular policy or custom." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Mills has not identified any such "policy or custom." Nor does Mills allege that, or provide evidence that would enable us to determine whether, Miller was a policymaker such that her decision to change the locks in this particular case constituted county policy for municipal liability purposes. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986). Accordingly, only Miller could be liable for any constitutional violations.

**1. Procedural Due Process**

Mills contends that the County violated the Due Process Clause of the Fourteenth Amendment by failing to provide him with a pre-eviction hearing. Mills is correct, of course, that due process generally requires notice and a hearing before the government deprives a citizen of his or her property, including in the context of an eviction. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). "Property interests are not created by the Constitution," however, but "'stem from an independent source such as state law.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The viability of Mills's procedural due-process claim thus largely depends on whether Mills

had a property interest under Michigan law. Because Mills was a trespasser at the time of the eviction, he did not.[10]

The fact that Michigan law provides for summary judicial proceedings to evict trespassers, *see* Mich. Comp. Laws § 600.5714(1)(f), does not mean that trespassers have a property interest for due-process purposes. The summary-proceedings statute at most provides a state procedural right for individuals without a property interest in the land they occupy (and only when the landowner chooses to utilize such proceedings), and "the Due Process Clause does not protect against the deprivation of state procedural rights." *W. Farms Assocs. v. State Traffic Comm'n of Conn.*, 951 F.2d 469, 472 (2d Cir. 1991); *see also Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("[A] mere violation of . . . state law will not establish a proper claim under § 1983.") (internal quotation marks omitted).

## 2. Fourth Amendment

Mills contends that the County employees' warrantless entry onto and removal of personal property from the Clifford Road property constituted an unreasonable seizure in violation of the Fourth Amendment. Property is seized within the meaning of the Fourth Amendment "when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal*

---

[10]None of the cases that Mills cites for the proposition that due process requires a pre-eviction hearing dealt with trespassers. Rather, each plaintiff undisputedly had either a full ownership interest or an existing tenancy under state law at the time of the eviction. *See Revis v. Meldrum*, 489 F.3d 273, 281 (6th Cir. 2007) (plaintiff was "the owner and occupant of his residence"); *Thomas*, 304 F.3d at 566 & n.2 (plaintiffs were tenants under the Kentucky Uniform Residential Landlord and Tenant Act); *Flatford v. City of Monroe*, 17 F.3d 162, 165–66 (6th Cir. 1994) (plaintiff was a tenant in an apartment building); *Deroshia*, 391 N.W.2d at 459 (plaintiff was a holdover tenant).

*v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). We have held that damage to personal property constitutes "meaningful interference" and is thus a seizure. *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (internal quotation marks omitted). A seizure of property violates the Fourth Amendment only if it is objectively unreasonable, however. *Soldal*, 506 U.S. at 71–72.

The County's actions constituted a seizure. *See Bonds*, 20 F.3d at 702. For the reasons discussed in Part II.A, the County had a reasonable belief that the eviction, including the removal of personal property unlawfully stored on county land, was proper. The allegation that County employees took the property for their personal use presents a stronger case of unreasonableness, but Mills has no evidence that Miller authorized or even knew about this activity. For § 1983 liability to lie against a supervisor for the actions of her subordinates, "'a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [employees].'" *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

### 3. First Amendment

Finally, Mills alleges that the County's actions were in retaliation for previous lawsuits that members of the Mills family had brought against the County, as well as for other criticisms that they had leveled at various County officials over the years. Mills waived this claim by failing to object to the magistrate judge's report and recommendation to enter judgment on it in favor of the County. *See, e.g.*, *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). Mills did not

respond to the County's waiver argument in his reply brief. We will hear objections not raised before the district judge "if exceptional circumstances are present that justify disregarding the rule in the interests of justice." *Id.* Such circumstances are not present in this case.

### III.  CONCLUSION

The viability of Mills's state-law illegal-eviction and § 1983 due-process claims depends upon whether Mills was a tenant or a trespasser at the time of the eviction. Because Mills was a trespasser, the County's actions did not violate the Michigan Anti-Lockout Statute, which, absent evidence of force, applies only to "tenant[s]." Without a cognizable property interest under Michigan law, Mills has no due-process claim. For similar reasons, the seizure of property in the course of the eviction was reasonable and thus did not violate the Fourth Amendment. Finally, Mills waived his First Amendment claim by failing to object to the magistrate judge's report and recommendation. For these reasons, we AFFIRM the judgment of the district court.