**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a1185n.06

No. 11-2335

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Nov 19, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Timothy Barkovic, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Terrance Hogan, Officer, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee, | ) | |
| and | ) | |
| | ) | |
| Township of Shelby; County of Macomb; Mark | ) | |
| Hackel, Sheriff; John Doe, Police Officer, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE:    Merritt, Moore, and McKeague, Circuit Judges.

**MERRITT, Circuit Judge.**   In this assault case involving a police officer who allegedly injured a lawyer, the main question is whether the dispute should go to the jury on the question of whether the police officer was acting under color of law for purposes of 42 U.S.C. § 1983.   Timothy Barkovic, a criminal defense lawyer, and Terrance Hogan, a police officer, had an argument that escalated into a physical altercation in a Michigan courthouse during business hours.   Barkovic sued Hogan under 42 U.S.C. § 1983, contending that this confrontation deprived him of his Fourth and Fourteenth Amendment rights.   Hogan moved for summary judgment; the district court, without oral argument, granted the motion, finding that Hogan was not acting under color of state law.   As

detailed below, there are issues of fact as to whether Hogan was acting under color of state law or purely as a private individual. Thus, in keeping with our reasoning in *Chapman v. Higbee Co.,* 319 F.3d 825 (6th Cir. 2003), this case requires a jury determination and should not be disposed of on summary judgment. We reverse and remand for further proceedings consistent with this opinion.

## I. Background

## A. The Incident

Timothy Barkovic is a Michigan criminal defense lawyer and a self-described "outspoken critic of police conduct." Def's. B. at 1. Terrance Hogan is an 11-year veteran of the Shelby Township Police Department. On March 10, 2009, the two individuals got into a verbal and physical fight in the hallway of the 41-A District Court Courthouse in Shelby Township, Michigan. Hogan pushed Barkovic into a door frame, causing injuries to Barkovic's face.

Before delving into the specific and contradictory facts of the physical assault, the history between these two men is worth mentioning. Hogan was involved in some capacity in approximately ten of Barkovic's previous cases. In the past, Hogan asked Barkovic to "stop interfering or talking" to victims in cases where Barkovic was the defense attorney. Hogan Dep. at 46-47. In his deposition, Hogan remembers at least another occasion where Barkovic approached him in court and "smacked" him inappropriately on the back. *Id.* at 49. Hogan stated, "I had other incidents in the past where I have told Mr. Barkovic just to knock it off and he has listened. So I was hoping that would be the case this time." *Id.* at 57. Hogan also stated, "For many years I have witnessed Barkovic to be disruptive, demeaning, insulting, unprofessional and often threatening to officers, prosecutors, attorneys, etc." *Id.* at 84.

On March 10, 2009, Hogan was at the courthouse, on duty, in response to a state-issued subpoena for a case in which Barkovic was the defense attorney, although Hogan was not in uniform or wearing a badge. Barkovic states that he arrived at the jury room that morning. The jury room, also known as the "prosecutor's room," is a gathering place for attorneys and police officers. The parties dispute whether this is a restricted area of the courthouse, but both agree that it is an area used for official business between defense attorneys, prosecutors, and police.

Barkovic admits that while in the jury room, he called one officer a "cockatiel," mocking his haircut, and may have referred to another officer as an "asshole." Barkovic Dep. at 175-78. Hogan said Barkovic "was disrespecting everybody in that whole room that day." Hogan Dep. at 57. Barkovic left the room after a few minutes and proceeded down the hallway. Hogan left the room shortly after. Here's where the stories differ.

Hogan claims that Barkovic, while walking down the hallway, told another officer, "Move Lurch." Hogan Dep. at 56-57. Hogan states that he then approached Barkovic and told him to "start being more professional and knock your crap off or something to that effect, knock your shit off." *Id.* Hogan claims that Barkovic responded by saying that he was going to "kick [Hogan's] ass" and called him a "punk bitch." *Id.* at 59. In response, Hogan says he told Barkovic that he was the "punk bitch." *Id.* According to Hogan, Barkovic proceeded to tell him to "fuck off" numerous times. *Id.* Hogan claimed he then turned away and that's when Barkovic pushed him from behind. Hogan states that he pushed Barkovic back and when Barkovic got closer, Hogan pushed him into the door frame.

Barkovic's version of the events characterize him as the victim and Hogan as the instigator. Barkovic states that Hogan unexpectedly approached him in the hallway and told him that he had "better shut [his] fucking mouth." Barkovic Dep. at 101. In oral argument, Barkovic's attorney contended that the "Lurch" comment, along with Barkovic's general behavior towards police officers, sparked Hogan's anger that morning. Barkovic states that the two men exchanged numerous "fuck you" curses back and forth. Barkovic Dep. at 194-95. Barkovic says he did not recognize Hogan as a police officer immediately, but once he realized who he was, told him "fuck you and your entire department." *Id.* He states that the next thing he remembers was "ending up on the floor on all fours with . . . droplets of blood hitting the plea form" he had in his hand. *Id.* at 199.

### B. The Lawsuit

One year later, Barkovic sued Hogan as well as Shelby Township, Macomb County, the Macomb County Sheriff, and various John Doe police officers. Barkovic claimed assault, battery, deprivation of civil rights under 42 U.S.C. § 1983, abuse of process, malicious prosecution, and equal protection denial. Hogan counterclaimed for assault and battery. Barkovic amended his complaint to remove requests for lost wages and earning capacity. The parties then stipulated to the dismissal of the claims against Shelby Township, Macomb County, the Macomb County Sheriff, and the John Doe officers. They also stipulated to the dismissal of the equal protection denial, abuse of process, and malicious prosecution claims against Hogan. Hogan moved for summary judgment on the remaining two claims, assault and battery and the § 1983 claim. In Hogan's motion for summary judgment, Hogan asserted that he was not acting under color of state law when he assaulted Barkovic, but rather that he was acting as a private person. In asserting the defenses of qualified

immunity in the Section 1983 action and statutory immunity for the state law claims, however, Hogan said he was acting during the course of his employment and within the scope of his authority. In addition, he stated that all of his actions were in accordance with the Shelby Township Police Department's use-of-force policy and other applicable guidelines.

The district court granted summary judgment, finding that Hogan was not acting under color of state law. The court then dismissed the state law claims of assault and battery. Barkovic timely appealed. This court remanded the case for the limited purpose of ruling on Hogan's counterclaims. On remand, the district court dismissed Hogan's counterclaims without prejudice.

The sole issue now on appeal, therefore, is whether the district court properly granted summary judgment in holding that there was no genuine issue of material fact as to whether Hogan was acting under color of state law for purposes of the § 1983 action.

## II. Analysis

### A. Standard of Review

This court reviews the district court's grant of summary judgment *de novo. Spears v. Ruth*, 589 F.3d 249, 253 (6th Cir. 2009). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52 (1986).

**B. Section 1983**

42 U.S.C. § 1983 is designed to provide a federal remedy for any violation of constitutional rights by those acting under color of state law. *See, e.g., West v. Atkins*, 487 U.S. 42 (1988); *Monroe v. Pape*, 365 U.S. 167, 175-76 (1961); *Screws v. United States*, 325 U.S. 91 (1945); *United States v. Classic*, 313 U.S. 299 (1941). In *United States v. Classic*, the Supreme Court held that "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." 313 U.S. at 326. In *West v. Atkins*, the Court stated that "State employment is generally sufficient to render the defendant a state actor . . . [A] defendant in a § 1983 suits acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." 487 U.S. at 50.

*Chapman v. Higbee Co.* presented a genuine issue of material fact as to whether a security officer acted under color of state law. 319 F.3d 825, 835 (6th Cir. 2003). In *Chapman*, a Dillard's security guard, who was an off-duty sheriff's deputy, wearing his official uniform, badge, and sidearm, stopped and searched the plaintiff. *Id.* at 834. The officer did not represent himself as a police officer or threaten to arrest the plaintiff, but he did initiate a strip search, which, according to Dillard's policy, required the intervention of police. *Id.* at 835. Thus, this court, describing the "color of state law" inquiry as "fact-specific" and determined on "a case-by-case basis," held that "a reasonable jury could very well find that the initiation of a strip search by an armed, uniformed sheriff's deputy constituted an act that may fairly be attributed to the state." *Id.* at 834-35 (citing

*Burton v. Wilmington Parking Auth.,* 365 U.S. 715 (1961)). In turn, this court determined that summary judgment was inappropriate and remanded the case. *Id.* at 835.

### C. Application

This case, like *Chapman*, presents a situation where there are "unanswered questions of fact regarding the proper characterization of the actions." *Chapman*, 319 F.3d at 835; *see also Layne v. Sampley,* 627 F.2d 12, 13 (6th Cir. 1980). Hogan was on duty that morning at the courthouse for official business. In fact, the business involved one of Barkovic's cases. Barkovic argues that Hogan was in the jury room, an area of the courthouse where he could only have been pursuant to his official duties. The record is unclear, however, as to the exact nature of the "jury room" and whether this was a restricted area. Additionally, the two men had previous encounters, all involving official duties rather than personal pursuits. Hogan's anger toward Barkovic stemmed from his role as a police officer. There is evidence that the verbal dispute resulted from Barkovic's insulting comments to other police officers that morning and that the fight escalated when Hogan felt he needed to "defend the dignity of his department." Barkovic also claims that Hogan's status as a police officer emboldened him to assault Barkovic.

On the other hand, Hogan argues that he did not assault Barkovic pursuant to a duty given to him by the state. He claims that he did not assert his authority as a police officer, and it is undisputed that Hogan was not in uniform or displaying a badge or a weapon. Hogan, however, also contends in his state immunity defense that he was acting during the course of his employment and within the scope of his authority in accordance with his department's guidelines and procedures.

Thus, as in the *Chapman* case, there is a dispute of fact to be presented to the jury, and summary judgment is inappropriate.

### III. Conclusion

For the reasons given above, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.

**McKEAGUE, Circuit Judge, dissenting.** Summary judgment is proper here because even if Barkovic's version of events be accepted as true, there is insufficient support for the conclusion that Hogan acted under color of state law. The majority pays lip service to the correct standard—a public employee acts under color of state law when he "exercise[s] power possessed by virtue of state law and made possible only because [he or she] is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotations omitted). However, the majority neglects to apply this standard. The majority opinion nowhere explains how Hogan could have been exercising state-given authority when he pushed Barkovic into the doorframe. In *Chapman*, the factfinder could reasonably have concluded that the security officer was exercising state-given power because he was dressed in uniform and engaging in activities bearing a relationship to law enforcement. Hogan, on the other hand, although present in the courthouse pursuant to a subpoena and therefore on official business, was not in uniform and was clearly not acting in a law enforcement capacity or exercising any power possessed by virtue of state law when he shoved Barkovic.

The majority notes that it is unclear whether the jury room was a restricted area. So what? The altercation did not occur there; it took place in a public hallway. The majority also notes that Hogan's status as a police officer was relevant to the background relationship between the two men, but this fact is irrelevant to deciding whether Hogan was exercising state-given power when he shoved Barkovic in response to verbal insults. Finally, although Barkovic alleges that Hogan's status as a police officer "embolden[ed]" him to attack Barkovic, Barkovic cites no record support for this allegation nor any authority for the notion that it is relevant.

-9-

In the end, the factual disputes in this case are immaterial.  Even under Barkovic's version of events, Hogan's actions were not made possible only because of his state-given powers.  But for his official status, Hogan could still have pushed Barkovic.  In my opinion, the district court properly granted summary judgment on Barkovic's § 1983 claim for excessive force in violation of his Fourth and Fourteenth Amendment rights, and Barkovic was properly left to pursue his state law remedies for assault and battery in state court.  I respectfully dissent.