MERRITT, Circuit Judge.
In this assault case involving a police officer who allegedly injured a lawyer, the main question is whether the dispute should go to the jury on the question of whether the police officer was acting under color of law for purposes of 42 U.S.C. § 1983. Timothy Barkovic, a criminal defense lawyer, and Terrance Hogan, a police officer, had an argument that escalated into a physical altercation in a Michigan courthouse during business hours. Barkovic sued Hogan under 42 U.S.C. § 1983, contending that this confrontation deprived him of his Fourth and Fourteenth Amendment rights. Hogan moved for summary judgment; the district court, without oral argument, granted the motion, finding that Hogan was not acting under color of state law. As detailed below, there are issues of fact as to whether Hogan was acting under color of state law or purely as a private individual. Thus, in keeping with our reasoning in Chapman v. Higbee Co., 319 F.3d 825 (6th Cir.2003), this case requires a jury determination and should not be disposed of on summary judgment. We reverse and remand for further proceedings consistent with this opinion.
I. Background
A. The Incident
Timothy Barkovic is a Michigan criminal defense lawyer and a self-described “outspoken critic of police conduct.” Def's. B. at 1. Terrance Hogan is an 11-year veteran of the Shelby Township Police Department. On March 10, 2009, the two individuals got into a verbal and physical fight in the hallway of the 41-A District Court Courthouse in Shelby Township, Michigan. Hogan pushed Barkovic into a door frame, causing injuries to Barkovic’s face.
Before delving into the specific and contradictory facts of the physical assault, the history between these two men is worth mentioning. Hogan was involved in some capacity in approximately ten of Barkovic’s previous cases. In the past, Hogan asked Barkovic to “stop interfering or talking” to victims in cases where Barkovic was the defense attorney. Hogan Dep. at 46-47. In his deposition, Hogan remembers at *498 least another occasion where Barkovic approached him in court and “smacked” him inappropriately on the back. Id. at 49. Hogan stated, “I had other incidents in the past where I have told Mr. Barkovic just to knock it off and he has listened. So I was hoping that would be the case this time.” Id. at 57. Hogan also stated, “For many years I have witnessed Barkovic to be disruptive, demeaning, insulting, unprofessional and often threatening to officers, prosecutors, attorneys, etc.” Id. at 84.
On March 10, 2009, Hogan was at the courthouse, on duty, in response to a state-issued subpoena for a case in which Barko-vic was the defense attorney, although Hogan was not in uniform or wearing a badge. Barkovic states that he arrived at the jury room that morning. The jury room, also known as the “prosecutor’s room,” is a gathering place for attorneys and police officers. The parties dispute whether this is a restricted area of the courthouse, but both agree that it is an area used for official business between defense attorneys, prosecutors, and police.
Barkovic admits that while in the jury room, he called one officer a “cockatiel,” mocking his haircut, and may have referred to another officer as an “asshole.” Barkovic Dep. at 175-78. Hogan said Bar-kovic “was disrespecting everybody in that whole room that day.” Hogan Dep. at 57. Barkovic left the room after a few minutes and proceeded down the hallway. Hogan left the room shortly after. Here’s where the stories differ.
Hogan claims that Barkovic, while walking down the hallway, told another officer, “Move Lurch.” Hogan Dep. at 56-57. Hogan states that he then approached Barkovic and told him to “start being more professional and knock your crap off or something to that effect, knock your shit off.” Id. Hogan claims that Barkovic responded by saying that he was going to “kick [Hogan’s] ass” and called him a “punk bitch.” Id. at 59. In response, Hogan says he told Barkovic that he was the “punk bitch.” Id. According to Hogan, Barkovic proceeded to tell him to “fuck off’ numerous times. Id. Hogan claimed he then turned away and that’s when Barko-vic pushed him from behind. Hogan states that he pushed Barkovic back and when Barkovic got closer, Hogan pushed him into the door frame.
Barkovic’s version of the events characterize him as the victim and Hogan as the instigator. Barkovic states that Hogan unexpectedly approached him in the hallway and told him that he had “better shut [his] fucking mouth.” Barkovic Dep. at 101. In oral argument, Barkovic’s attorney contended that the “Lurch” comment, along with Barkovic’s general behavior towards police officers, sparked Hogan’s anger that morning. Barkovic states that the two men exchanged numerous “fuck you” curses back and forth. Barkovic Dep. at 194-95. Barkovic says he did not recognize Hogan as a police officer immediately, but once he realized who he was, told him “fuck you and your entire department.” Id. He states that the next thing he remembers was “ending up on the floor on all fours with ... droplets of blood hitting the plea form” he had in his hand. Id. at 199.
B. The Lawsuit
One year later, Barkovic sued Hogan as well as Shelby Township, Macomb County, the Macomb County Sheriff, and various John Doe police officers. Barkovic claimed assault, battery, deprivation of civil rights under 42 U.S.C. § 1988, abuse of process, malicious prosecution, and equal protection denial. Hogan counterclaimed for assault and battery. Barkovic amended his complaint to remove requests for lost wages and earning capacity. The par *499 ties then stipulated to the dismissal of the claims against Shelby Township, Macomb County, the Macomb County Sheriff, and the John Doe officers. They also stipulated to the dismissal of the equal protection denial, abuse of process, and malicious prosecution claims against Hogan. Hogan moved for summary judgment on the remaining two claims, assault and battery and the § 1983 claim. In Hogan’s motion for summary judgment, Hogan asserted that he was not acting under color of state law when he assaulted Barkovie, but rather that he was acting as a private person. In asserting the defenses of qualified immunity in the Section 1983 action and statutory immunity for the state law claims, however, Hogan said he was acting during the course of his employment and within the scope of his authority. In addition, he stated that all of his actions were in accordance with the Shelby Township Police Department’s use-of-force policy and other applicable guidelines.
The district court granted summary judgment, finding that Hogan was not acting under color of state law. The court then dismissed the state law claims of assault and battery. Barkovie timely appealed. This court remanded the case for the limited purpose of ruling on Hogan’s counterclaims. On remand, the district court dismissed Hogan’s counterclaims without prejudice.
The sole issue now on appeal, therefore, is whether the district court properly granted summary judgment in holding that there was no genuine issue of material fact as to whether Hogan was acting under color of state law for purposes of the § 1983 action.
II. Analysis
A. Standard of Review
This court reviews the district court’s grant of summary judgment de novo. Spears v. Ruth, 589 F.3d 249, 253 (6th Cir.2009). Summary judgment is proper when “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). This court must determine “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.” Anderson v. Liberty Lobby, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
B. Section 1983
42 U.S.C. § 1983 is designed to provide a federal remedy for any violation of constitutional rights by those acting under color of state law. See, e.g., West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Monroe v. Pape, 365 U.S. 167, 175-76, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). In United States v. Classic, the Supreme Court held that “misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.” 313 U.S. at 326, 61 S.Ct. 1031. In West v. Atkins, the Court stated that “State employment is generally sufficient to render the defendant a state actor ... [A] defendant in a § 1983 suits acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.” 487 U.S. at 50, 108 S.Ct. 2250.
Chapman v. Higbee Co. presented a genuine issue of material fact as to wheth *500 er a security officer acted under color of state law. 319 F.3d 825, 835 (6th Cir.2003). In Chapman, a Dillard’s security guard, who was an off-duty sheriffs deputy, wearing his official uniform, badge, and sidearm, stopped and searched the plaintiff. Id. at 834. The officer did not represent himself as a police officer or threaten to arrest the plaintiff, but he did initiate a strip search, which, according to Dillard’s policy, required the intervention of police. Id. at 835. Thus, this court, describing the “color of state law” inquiry as “fact-specific” and determined on “a case-by-case basis,” held that “a reasonable jury could very well find that the initiation of a strip search by an armed, uniformed sheriffs deputy constituted an act that may fairly be attributed to the state.” Id. at 834-35 (citing Burton v. Wilmington Parking Auth., 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). In turn, this court determined that summary judgment was inappropriate and remanded the case. Id. at 835.
C. Application
This case, like Chapman, presents a situation where there are “unanswered questions of fact regarding the proper characterization of the actions.” Chapman, 319 F.3d at 835; see also Layne v. Sampley, 627 F.2d 12, 13 (6th Cir.1980). Hogan was on duty that morning at the courthouse for official business. In fact, the business involved one of Barkovic’s cases. Barkovic argues that Hogan was in the jury room, an area of the courthouse where he could only have been pursuant to his official duties. The record is unclear, however, as to the exact nature of the “jury room” and whether this was a restricted area. Additionally, the two men had previous encounters, all involving official duties rather than personal pursuits. Hogan’s anger toward Barkovic stemmed from his role as a police officer. There is evidence that the verbal dispute resulted from Barkovic’s insulting comments to other police officers that morning and that the fight escalated when Hogan felt he needed to “defend the dignity of his department.” Barkovic also claims that Hogan’s status as a police officer emboldened him to assault Barkovic.
On the other hand, Hogan argues that he did not assault Barkovic pursuant to a duty given to him by the state. He claims that he did not assert his authority as a police officer, and it is undisputed that Hogan was not in uniform or displaying a badge or a weapon. Hogan, however, also contends in his state immunity defense that he was acting during the course of his employment and within the scope of his authority in accordance with his department’s guidelines and procedures. Thus, as in the Chapman case, there is a dispute of fact to be presented to the jury, and summary judgment is inappropriate.
III. Conclusion
For the reasons given above, we REVERSE the district court’s grant of summary judgment and REMAND for further proceedings consistent with this opinion.